Submitted August 28, 2013, reversed and remanded on Counts 1 and 2; remanded for resentencing; otherwise affirmed February 20, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM MATTHEW GRAY,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR110048DV; A149013

322 P3d 1094

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant appeals, following a jury trial, challenging his convictions for rape in the first degree, ORS 163.375 (Count 1), and sexual abuse in the first degree, ORS 163.427 (Count 2).[1] Defendant assigns error to the trial court's failure to instruct the jury that, to find defendant guilty, it must first find that defendant acted with a culpable mental state with respect to the element of "forcible compulsion." For the reasons explained below, we conclude that the trial court so erred. Accordingly, we reverse and remand with respect to Counts 1 and 2.[2]

At trial, the complainant, A, and defendant testified to drastically different versions of the encounter that precipitated the charges in this case. Because those differences are material to our consideration of whether to exercise our discretion to correct the purported instructional error, we describe that conflicting testimony here.

At the time of the events underlying defendant's convictions, defendant and A were living together as a married couple. A testified that, in the early morning of January 17, 2011, she awoke in bed when defendant pressed his erect penis against her anus. At that point, she moved away from him. According to A, defendant then pulled her closer and she felt his penis deeper in her anus, at which point she said, "What are you doing? Stop." A testified that defendant then pulled her shoulder toward him and said, "If you're not going to give it to me, I am going to take it." Defendant pushed A onto her back. He then got on top of her, put his hands around her neck, and engaged in sexual intercourse with her. During that time, A told him "no" and was crying. A also testified that she and defendant had experimented in their sexual relationship, and that anal sex, hair pulling, and defendant putting his hands on her neck had previously been accepted sexual behavior in their relationship.

---

[1] Defendant was also convicted of sexual abuse in the second degree (Count 3), but does not challenge that conviction on appeal.

[2] Defendant also assigns error to the trial court's failure to merge his conviction for first-degree rape into his conviction for first-degree sexual abuse. Because we reverse and remand based on our conclusion that the trial court committed instructional error, we do not reach defendant's assignment of error pertaining to merger of convictions.

For his part, defendant testified that, on the evening of January 16, 2011, he and A had been awake watching a movie when she initiated sex by touching his penis and pulling him on top of her. According to defendant, they engaged in consensual sexual intercourse both in the missionary position and with defendant behind A. Defendant explained that, when he was behind A, he had put his hands on her back, but that when he was on top of A, he had not put his hands on her throat and, in fact, he had to hold himself up or he would crush her due to his large size. Defendant explained that, in his opinion, the red marks on A's throat were a symptom of anger or anxiety, in that A is fair-skinned and, "when she gets real mad, * * * [s]he starts getting splotchy on her neck." Defendant testified that A did not tell him "no" that night, and that he did not attempt to engage in anal sex with A.

A spoke with a local law enforcement officer about the above-described encounter. The officer took photographs of A's neck, which displayed red blotches on the front of her throat. The state subsequently charged defendant with rape in the first degree (Count 1), ORS 163.375; sexual abuse in the first degree (Count 2), ORS 163.427; sexual abuse in the second degree (Count 3), ORS 163.425; sexual abuse in the first degree (Count 4), ORS 163.427; attempted sodomy in the first degree (Count 5), ORS 163.405; attempted sexual abuse in the second degree (Count 6), ORS 163.425; strangulation (Count 7), ORS 163.187; assault in the fourth degree constituting domestic violence (Count 8), ORS 163.160; and coercion (Count 9), ORS 163.275. With respect to Count 1 and Count 2, the state alleged in the indictment that defendant "did unlawfully and knowingly, by means of forcible compulsion, engage in sexual intercourse with [A]," ORS 163.375(1)(a),[3] and that defendant "did unlawfully and knowingly, by means of forcible compulsion, subject [A] to sexual contact by touching her vagina," ORS 163.427(1)(a)(B).[4]

---

[3] ORS 163.375(1)(a) provides, "A person who has sexual intercourse with another person commits the crime of rape in the first degree if * * * [t]he victim is subjected to forcible compulsion by the person[.]"

[4] ORS 163.427(1)(a)(B) provides, "A person commits the crime of sexual abuse in the first degree when that person * * * [s]ubjects another person to sexual contact and * * * [t]he victim is subjected to forcible compulsion by the actor[.]"

With respect to Counts 1 and 2, the trial court instructed the jury as follows:

"As to Count 1, rape in the first degree, Oregon law provides that a person commits the crime of rape in the first degree when the person knowingly has sexual intercourse with another person and the other person is subject to forcible compulsion by him.

"In this case, to establish the crime of rape in the first degree, the state must prove beyond a reasonable doubt the following four elements: First, the act occurred in Yamhill County, Oregon; second, the act occurred on or about January 17, 2011; third, [defendant] knowingly had sexual intercourse with [A]; and, four, [A] was subjected to forcible compulsion by [defendant].

"As to Count 2, sexual abuse in the first degree, Oregon law provides that a person commits the crime of sexual abuse in the first degree when the person knowingly subjects another person to sexual contact and the victim is subjected to forcible compulsion by the actor.

"In this case, to establish the crime of sexual abuse in the first degree, the state must prove beyond a reasonable doubt the following four elements: First, the act occurred in Yamhill County, Oregon; second, the act occurred on or about January 17, 2011; third, [defendant] knowingly subjected [A] to sexual contact by touching her vagina; and, fourth, [A] was subjected to forcible compulsion by [defendant]."

Defendant did not take exception to those instructions or propose further instructions to clarify to the jury that the forcible compulsion element of each crime as charged requires a culpable mental state.

The jury acquitted defendant of the counts based on the charges that defendant had touched A's anus (Counts 4, 5, and 6). The jury also acquitted defendant of strangulation (Count 7) and assault in the fourth degree constituting domestic abuse (Count 8).[5] The jury found defendant guilty of rape in the first degree (Count 1), sexual abuse in the first degree (Count 2), and sexual abuse in the second degree (Count 3), all based on defendant engaging in

---

[5] Count 9, coercion, was dismissed.

nonconsensual sexual intercourse with A. The trial court merged Count 3 into Count 1. Defendant received a mandatory minimum sentence of 100 months on Count 1 and a concurrent mandatory minimum sentence of 75 months on Count 2.

Defendant appeals, assigning error to the trial court's failure to instruct the jury that it must find that defendant acted with the requisite culpable mental state with respect to the element of "forcible compulsion" for both the rape and sexual abuse charges. *See State v. Nelson*, 241 Or App 681, 688, 251 P3d 240 (2011), *rev dismissed*, 354 Or 62 (2012) (so holding). Defendant acknowledges that he failed to request such instructions and that he also failed to take exception to the instructions that the trial court did give—thus, as defendant forthrightly admits, he failed to preserve his present challenge.

Nonpreservation notwithstanding, defendant argues that the error is plain under *Nelson*. In *Nelson*, we reversed the defendant's convictions for first-degree rape and first-degree sexual abuse after concluding that the "subjected to forcible compulsion" element of both of those crimes requires a culpable mental state and, therefore, we concluded that the trial court erred in refusing to give the defendant's requested jury instruction that correctly stated that rule. *Id.* at 689. Invoking *Nelson* and (implicitly) *State v. Jury*, 185 Or App 132, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003), defendant asserts that the failure to instruct the jury as to the necessity of finding that he acted with the requisite culpable mental state with respect to forcible compulsion constituted an "error of law apparent on the record," ORAP 5.45(1), and requests that we exercise our discretion, *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991), to correct that "plain error."

Defendant's "plain error" challenge implicates this court's precedents by which we have repeatedly held that ORCP 59 H[6] precludes our review of unpreserved purported

---

[6] The Council on Court Procedures substantially amended ORCP 59 H (2011) on December 1, 2012. Those amendments became effective January 1, 2014. However, given the Supreme Court's analysis and disposition in *State v. Vanornum*, 354 Or 614, 317 P3d 889 (2013), those amendments do not affect our

instructional error in similar circumstances. *See, e.g., State v. Ledford*, 252 Or App 572, 573, 287 P3d 1278 (2012), *rev den*, 353 Or 209 (2013) (concluding that, pursuant to ORCP 59 H, the defendant's contention that the trial court committed plain error by failing to instruct the jury that the state was required to prove that defendant knowingly subjected the victim to forcible compulsion was not reviewable) (citing *State v. O'Hara*, 251 Or App 244, 253-54, 283 P3d 396 (2012), *rev den*, 353 Or 209 (2013)); *see also State v. Guardipee*, 239 Or App 44, 243 P3d 149 (2010) (holding that ORCP 59 H bars plain error review of unpreserved objection that the trial court erred in failing to deliver a requested jury instruction); *State v. Toth*, 213 Or App 505, 509, 162 P3d 317 (2007) (observing that ORCP 59 H generally bars review of unpreserved objections regarding jury instructions).

Those precedents would, indeed, have precluded defendant's present challenge. But they are no longer good law. *State v. Vanornum*, 354 Or 614, 317 P3d 889 (2013).

In *Vanornum*, the defendant, who had struggled with police officers when they arrested him for disorderly conduct at a public demonstration, was charged with resisting arrest. He raised a defense of self-defense. *State v. Vanornum*, 250 Or App 693, 694, 282 P3d 908 (2012), *rev'd*, 354 Or 614, 317 P3d 889 (2013). In instructing the jury on self-defense, the trial court used a uniform criminal jury instruction which stated that a person may use reasonable physical force to defend against an arresting officer's use of

---

analysis. References in this opinion to ORCP 59 H are to the 2011 version of that rule, which is the same version that has been in effect since 2005.

ORCP 59 H (2011) provided:

"H(1) Statement of issues or instructions given or refused. A party may not obtain review on appeal of an asserted error by a trial court in submitting or refusing to submit a statement of issues to a jury pursuant to subsection C(2) of this rule or in giving or refusing to give an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury.

"H(2) Exceptions must be specific and on the record. A party shall state with particularity any point of exception to the trial judge. A party shall make a notation of exception either orally on the record or in a writing filed with the court."

ORS 136.330(2) provides that "ORCP 59 H applies to and regulates exceptions in criminal actions."

unreasonable physical force. The defendant did not except to that instruction. *Id.* The defendant did, however, request an additional special instruction stating that the jury must view the reasonableness of the officers' use of force and the reasonableness of the defendant's responsive use of force from the defendant's perspective. The trial court refused to give that special instruction, and the defendant took exception to that refusal. *Id.* at 695. The defendant was convicted of resisting arrest, ORS 162.315, and he appealed.

After the defendant's trial, and during the pendency of his appeal, the Supreme Court decided *State v. Oliphant*, 347 Or 175, 218 P3d 1281 (2009). In *Oliphant*, the court held that the same uniform jury instruction that the trial court had given in *Vanornum*—that is, the instruction to which the defendant had *not* excepted—was not a correct statement of law because it instructed the jury to approach the reasonableness of the arresting officer's use of force from the officer's perspective, when the proper referent for the jury's self-defense assessment is whether the defendant reasonably believed that excessive, *i.e.*, unlawful, force was being used against him so that he was justified in responding with reasonable physical force in self-defense. *Oliphant*, 347 Or at 194. Accordingly, the Supreme Court held that the defendant "had a right to have the jury consider the circumstances surrounding the event from his own point of view," and the jury should have been so instructed. *Id.*

On appeal, the defendant in *Vanornum* invoked *Oliphant* and argued that (1) the trial court had erred in refusing to give his requested special instruction, which he contended was a correct statement of the law under *Oliphant*, and (2) the trial court had erred in giving the uniform instruction, which was an incorrect statement of the law under *Oliphant*. The defendant acknowledged that he had failed to preserve his second assignment of error, but argued that the error was plain in light of the Supreme Court's holding in *Oliphant*.

We rejected both of the defendant's challenges as unpreserved. With respect to the first assignment (pertaining to the failure to give the requested special instruction), we concluded that ORCP 59 H precluded appellate review

because the defendant "did not adequately 'identif[y] the asserted error to the trial court,' ORCP 59 H(1), and did not 'state with particularity,' ORCP 59 H(2), the alleged error." *Vanornum*, 250 Or App at 698 (brackets in original). With respect to the second assignment of error, we further concluded that ORCP 59 H precluded review because defendant had failed to take exception to the jury instruction that the trial court had given. *Id.* at 699.

The Supreme Court reversed. In so holding, the court explained:

> "*The text of ORCP 59 H, its relevant context, and its history all lead us to conclude that that rule was not intended to govern preservation of instructional error for purposes of appellate court review or to preclude appellate courts from reaching plain errors.* Instead, in promulgating ORCP 59 H, the [Council on Court Procedures] left the announcement and development of those rules to the appellate courts. When the legislature simultaneously amended ORS 136.330(2) to extend ORCP 59 H to criminal cases generally, it did so without any understanding that the rule would apply differently to those cases. As a result, ORCP 59 H, as cross-referenced in that statute, has no broader scope or different meaning than the rule standing alone. Necessarily, then, in criminal cases as well as civil ones, ORCP 59 H does not govern preservation of instructional error or preclude an appellate court from reviewing a claim of error pursuant to the court's traditional plain error doctrine."

*Vanornum*, 354 Or at 628 (emphasis added). Thus, ORCP 59 H did not preclude or foreclose "plain error" review of the asserted instructional error. Further, the court concluded that, based on *Oliphant*, which issued after trial, the giving of the uniform instruction constituted plain error.[7] *Id.* at

---

[7] The Supreme Court in *Vanornum* observed in a footnote:

"The state has not argued that, in determining whether the error was obvious and beyond reasonable dispute, a reviewing court should consider the law as of the time the trial court made its decision, as opposed to as of the time that the case is on direct appeal. The Court of Appeals has concluded that plain error should be determined by reference to the law existing as of the time of the appeal. *State v. Jury*, 185 Or App 132, 138-39, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003). This court has not previously taken up that question, and has not been asked to do so in this case."

354 Or at 630 n 9. With respect, we are puzzled by the significance of that footnote. Principles of preservation, which necessarily encompass the doctrine of

630. The Supreme Court remanded for this court to exercise its *Ailes* discretion.

In sum, ORCP 59 H is inapposite to—much less categorically preclusive of—appellate review of asserted instructional plain error. Rather, our review of such error, like any other purported plain error, is determined by reference to the construct prescribed in *State v. Brown*, 310 Or 347, 800 P2d 259 (1990), and *Ailes*.

*Brown* prescribes three cumulative elements of plain error: (1) the error must be one "of law," (2) the legal point must be "apparent," which means "obvious, not reasonably in dispute," and (3) the error must appear "on the face of the record," so that "[w]e need not go outside the record or choose between competing inferences to find it." *Brown*, 310 Or at 355. Further, with respect to asserted instructional error, "the question of what must be included in a jury instruction is a question of law, and what was or was not included is determined readily by examining the instructions that were given." *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). Thus, in this case, the only *Brown*-related issue is whether the purported instructional error was "obvious."

The state argues that the trial court's failure to give a jury instruction *that defendant never proposed* does not constitute "obvious" legal error. In that regard, the state asserts that *Nelson* is distinguishable, because, there, the defendant actually requested an instruction that the state was required to prove that he knowingly subjected the victim to forcible compulsion, and the court refused to give that instruction. 241 Or App at 684. With respect, the state

---

plain error, are matters that the appellate court has a *sua sponte* obligation to apply and determine. *State v. Wyatt*, 331 Or 335, 346, 15 P3d 22 (2000). If the construct that this court adopted *en banc* in *Jury*, and has consistently adhered to since, is incorrect, then the asserted error in *Vanornum* would seem (at least if measured as of the time of trial) to have been "subject to reasonable dispute"— and, thus, would not have been susceptible to review pursuant to ORAP 5.45(1). *Accord Henderson v. United States*, ___ US ___, 133 S Ct 1121, 1125-31, 185 L Ed 2d 85 (2013) (holding that, regardless of whether a legal question was settled at the time of trial, an error is "plain" within the meaning of Federal Rule of Criminal Procedure 52(b) and, thus, reviewable, so long as the error was plain at the time of appellate review).

misconceives the applicable analysis.[8] The fact that the defendant in *Nelson* preserved his appellate challenge is immaterial to whether a trial court's failure to instruct the jury as to the culpable mental state for an element of a crime is subject to plain error review.

In instructing the jury, the trial court is required to "state to the jury all matters of law necessary for its information in giving its verdict." ORCP 59 B; ORS 136.330(1) (providing that ORCP 59 B applies to criminal actions). Accordingly, the trial court must instruct the jury on all the elements of the charged crimes. *Lotches*, 331 Or at 472 ("[A] jury must be instructed concerning the necessity of agreement on all material elements of a charge in order to convict."). Consistently with that principle, because the "subjected to forcible compulsion" element of first-degree rape and first-degree sexual abuse requires that the jury find that the defendant acted with a culpable mental state, *Nelson*, 241 Or App at 688, the trial court is required to instruct the jury that, to convict, it must determine that the state has proved beyond a reasonable doubt that defendant acted with a culpable mental state in subjecting the victim to forcible compulsion. That legal point is "obvious" and "not reasonably in dispute." *Accord Vanornum*, 354 Or at 630 (holding that "the fact that the [uniform] instruction is an incorrect statement of the law, and thus was error to give under our decision in *Oliphant*, is beyond reasonable dispute"). Here, the trial court's instruction incorrectly stated the law because it omitted elements of the charged crimes. We conclude that the asserted instructional error is plain.

Our analysis does not end with the conclusion that the court plainly erred, because not all plain error is reversible error. After we conclude that error is plain, we must

---

[8] The state also contends that, at the time of defendant's trial in this case, *Nelson* had not been decided and, because the legal principle on which defendant relies had not yet been established, it could not be "obvious." In fact, we decided *Nelson* approximately two months before the trial in this case: *Nelson* was decided on March 30, 2011, and the jury trial in this case took place between May 17 and May 25, 2011. In all events, our analysis would be the same even if *Nelson* had issued after defendant's trial. That is so because, under the construct announced in *Jury*, 185 Or App 132, plain error is determined by reference to the law existing at the time the appeal is decided.

then decide whether to exercise our discretion to correct the error. *Ailes*, 312 Or at 381-82. In making that determination, we consider, among other things,

> "the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Id.* at 382 n 6.

The state asserts that, even if we conclude that the court plainly erred, we should not exercise our discretion to correct the error because "there was abundant evidence in this case from which a reasonable juror could easily find or infer that defendant was aware of the fact that he was compelling [A] *** to engage in sexual conduct" and, thus, the instructional error, if any, was harmless. The state points to A's testimony that, after defendant initiated sexual conduct, she told him to stop, but he persisted and, after telling her that he was going to "take it," pushed her onto her back, placed his hands around her neck, and engaged in sexual intercourse with her.

Defendant argues that the instructional error was not harmless. Defendant contends that, even if the jury believed A's versions of the events (which, as defendant points out, is questionable given the mixed verdict), a reasonable juror might have doubted whether defendant knew that he had subjected A to forcible compulsion, particularly given A's testimony that she had, on previous occasions, allowed defendant to pull her hair and put his hands on her neck. Therefore, the absence of a specific instruction with respect to defendant's mental state cannot be said to have had "little likelihood" to have affected the verdicts. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (stating that the harmless error test is whether there is "little likelihood that the particular error affected the verdict"); *see also id.* ("The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, *not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.*" (Emphasis added.)).

We agree with defendant that the error was not harmless for the reasons that he posits. Additionally, although defendant could have prevented the problem by simply requesting a further instruction, which militates against exercising our discretion, defendant's challenged convictions are for serious felonies. *See State v. Pervish*, 202 Or App 442, 466, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006) (holding that unpreserved instructional error was plain and exercising our discretion to correct it, in part because of the seriousness of the convictions). Given the gravity of the error, we exercise our discretion to correct it.

Reversed and remanded on Counts 1 and 2; remanded for resentencing; otherwise affirmed.